**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **FRANK STONE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 3:25-cv-01146** |
| ) | |
| **HEALTHTRACKRX, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Before the Court is HealthTrackRx, Inc.'s ("HealthTrack") motion for judgment on the

pleadings (Doc. No. 8), which is fully briefed and ripe for decision. (Doc. Nos. 8-1, 12, 13). For

the following reasons, the motion will be granted in part and denied in part.

## I. BACKGROUND AND FACTUAL ALLEGATIONS[1]

HealthTrack and Frank Stone entered into an employment agreement ("Agreement")[2]

when HealthTrack was contemplating a merger. (Doc. No. 1-1 at ¶ 3). The Agreement would give

Stone some degree of job security at HealthTrack if the merger took place. (Id.). The September

4, 2024 employment offer letter from HealthTrack's Chief Financial Officer ("CFO") that Stone

---

[1] The Court assumes the truth of the well-pleaded factual allegations in the Complaint for purposes of ruling on the motion for judgment on the pleadings. See, e.g., Brown v. Louisville-Jefferson Cnty. Metro Gov't, 135 F.4th 1022, 1030 (6th Cir. 2025).

[2] Stone attached the Agreement and an addendum to the Agreement to the Complaint. (Doc. No. 1-1 at 8–10) "The court may consider documents attached to the pleadings, documents that are referred to in the pleadings and [are] integral to the claims, and matters of public record without converting a motion for judgment on the pleadings to a motion for summary judgment. And [w]hen an exhibit contradicts the complaint, the exhibit trumps the allegations." Brown, 135 F.4th at 1030 (citations and quotation marks omitted).

signed as "accepted" on September 5, 2024 reflects the Agreement. The Agreement states, in

relevant part:

> We are pleased to extend an employment offer to you for the position of Vice President of Enterprise Partnerships with HealthTrackRx. . . [W]e don't make hiring decisions lightly. . . .
>
> Our offer includes a starting salary in the amount of $225,000.00 per year, which will be paid biweekly. You will be eligible for an annual bonus of up to 25% of your annual salary based upon achievement of both personal and overall company performance goals, each of which will be established within 90 days of employment and then in each calendar year. Your bonus eligibility for FY 2025 will be guaranteed in full and be payable in Q3 of 2025. We are also including a Sign-on Bonus of $25,000.00 to be paid prior to 12/31/2024. In the event you resign prior to 12/31/2025, the sign-on bonus shall be repayable to the Company and may be withheld from final pay.
>
> Additionally, you will be eligible for a transaction incentive of $100,000.00 should the Company achieve a Change of Control Event provided you are still employed and in good standing at such time. Additionally, the company will guarantee 12 months of employment subsequent to such Change of Control should such occur prior to 12/31/2025. In the event you are terminated prior to your twelfth month of service following a Change of Control, you will be eligible for base pay severance for the difference in 12 and months served. . . .

(Doc. No. 1-1 at 8–9).

On November 21, 2024, HealthTrack's CFO sent an email to Richard Loggins[3] that was

"meant to serve [as] an addendum to the offer letter," (Doc. No. 1-1 at ¶ 4 and PageID # 14),

which states:

> Rick— I realized I neglected to add the language below to [Stone's] letter (this exists in some of the other Trxn Incentive Letters). This email is meant to serve an addendum to the offer letter itself and memorialize the below intent.
>
> "Should a change of control occur on or before 12/31/2025 you will receive $100,000.00 at the time of the transaction. In the event a transaction does not occur, this amount will be paid in full during Q1 of 2026."

(Doc. No. 1-1 at 10).

---

[3] It is unclear from the pleadings what Loggins' role at HealthTrack is. However, HealthTrack refers to him as its VP of Human Resources in the briefing. (Doc. No. 8-1 at 2).

According to Stone, the anticipated merger did not occur as of June 11, 2025, when his position at HealthTrack was eliminated. (Doc. No. 1-1 ¶¶ 5, 9). After termination, HealthTrack refused to pay him the annual bonus of "25% of his base salary, severance, or the $100,000.00 transaction incentive." (Doc. No. 1-1 at PageID # 12). Stone filed this suit, alleging claims under Tennessee law for breach of contract and declaratory judgment. (Doc. No. 1-1 ¶¶ 7–11).

## II.  LEGAL STANDARD

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." Bates v. Green Farms Condo. Ass'n, 958 F.3d 470, 480 (6th Cir. 2020). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cooperrider v. Woods, 127 F.4th 1019, 1027 (6th Cir. 2025) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))). When assessing a Rule 12(b)(6) motion to dismiss, the Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018). Then, the Court must "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Id. (internal citations omitted). "While the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions'" or "'a formulaic recitation of a cause of action's elements[.]'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (internal citation omitted).

**III.    ANALYSIS**

As an initial matter, while HealthTrack requests dismissal of this case, (Doc. No. 8), it makes no argument for dismissal of Stone's declaratory judgment claim, only his breach of contract claim. (Doc. No. 8-1 at 1). HealthTrack only mentions the declaratory judgment claim in its reply brief. (Doc. No. 13 at 2–3). "[G]enerally speaking, arguments raised for the first time in reply briefs are waived, and this applies both on appeal and to summary judgment motions filed in the trial court." Palazzo v. Harvey, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (citations omitted). Reply briefs are intended to "reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." Id. (citation omitted). Therefore, HealthTrack waived dismissal of Stone's declaratory judgment claim. The Court will only address dismissal of the breach of contract claim.

To state a claim for breach of contract under Tennessee law, a plaintiff must show "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." BancorpSouth Bank, Inc. v. Hatchel, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006) (citations and quotation marks omitted). In ruling on the breach of contract claim, the Court interprets the contract. "The cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006) (citation omitted). The Court's focus is on "the plain meaning of the words in the document to ascertain the parties' intent." Id. (citation omitted). "If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes." Id. "Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact appropriate for a jury." Planters Gin Co., 78 S.W.3d at 890 (citation and quotation marks omitted). "Contractual language is ambiguous

4

only when it is of uncertain meaning and may fairly be understood in more ways than one.'" <u>Watson</u>, 195 S.W.3d at 611 (citation and quotation marks omitted).

HealthTrack argues that Stone fails to state a claim for breach of contract regarding the annual 25% bonus, severance, and the $100,000.00 incentive payment. The Court will address each.

First, HealthTrack believes that the Agreement does not require payment of the annual bonus of 25% of Stone's base salary, but merely provides for bonus eligibility subject to achievement of performance goals. (Doc. No. 8-1 at 4). As quoted above, the Agreement says that Stone is entitled to an annual bonus of 25% of his salary based on personal and company performance goals. And for FY 2025 Stone's bonus eligibility was "guaranteed in full" and payable in the third quarter of 2025. (Doc. No. 1-1 at 8). The word "eligible" is commonly understood to mean "[f]it and proper to be selected or to receive a benefit; legally qualified for a[] privilege[] or status." ELIGIBLE, Black's Law Dictionary (12th ed. 2024). Construing the allegations in the Complaint in Stone's favor, the Agreement guaranteed his entitlement to receive the 2025 annual 25% bonus. Nevertheless, HealthTrack did not make payment. Stone plausibly pleads a breach of contract claim with respect to the 2025 annual 25% bonus.

Next, the Court concludes that Stone plausibly alleges a contract right to the $100,000.00 incentive payment. (Doc. No. 8-1 at 5). The Agreement states that Stone will be eligible for a transaction incentive of $100,000.00 should the Company achieve a Change of Control if he is "employed and in good standing." (Doc. No. 1-1 at 8). It goes on to state that HealthTrack "will guarantee 12 months of employment subsequent to such Change of Control should such occur prior to 12/31/2025. In the event you are terminated prior to your twelfth month of service following a Change of Control, you will be eligible for base pay severance for the difference in 12

and months served." (Id.). The addendum then adds, "'Should a change of control occur on or before 12/31/2025 you will receive $100,000.00 at the time of the transaction. In the event a transaction does not occur, this amount will be paid in full during Q1 of 2026.'" (Id. at 10). A change of control commonly involves installation of new management. See, e.g., Tassos Epicurean Cuisine, Inc. v. Triad Bus. Sols., Inc., No. 205-CV-71510-DT, 2007 WL 956745, at *9 (E.D. Mich. Mar. 28, 2007).

According to HealthTrack, the Agreement and addendum together make "clear that the transaction incentive was contingent upon either a merger prior to 12/31/2025 (the transaction) and/or [Stone's] continued employment in good standing at the time of the contemplated payment." (Doc. No. 8-1 at 5). This view is incomplete. HealthTrack overlooks the sentence: "In the event a transaction [i.e., a merger/change of control] does not occur, this amount [$100,000.00] will be paid in full during Q1 of 2026." (Doc. No. 1-1 at 10). The Court must interpret and give meaning to all of the words in the Agreement and addendum. A plausible reading of the Agreement and addendum is that if a change of control happened before December 31, 2025 and while Stone was still employed, he would receive $100,000.00 plus severance of up to 12 months' salary (if he was terminated within twelve months after the change of control). However, if no change of control occurred, he was to receive $100,000.00 in Q1 of 2026, plus any salary he had received as of whatever date he was terminated. In other words, in order to give Stone some economic security and incentive to remain at HealthTrack notwithstanding the transaction or merger and to incentivize him to accept HealthTrack's employment offer, the $100,000.00 would be paid to him regardless. Under this plausible reading, Stone has stated a claim for breach of contract with respect to the $100,000.00 incentive payment.

6

HealthTrack's last argument is that Stone is not entitled to severance. (Doc. No. 8-1 at 7). Stone does not make any argument in opposition. This means he has waived opposition to the motion as it relates to severance. See Scott v. State of Tenn., 878 F.2d 382 (6th Cir. 1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion.") (citation omitted). The breach of contract claim based on severance will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings (Doc. No. 8) will be granted in part and denied in part.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE

7